**MICHELLE BETANCOURT**
California State Bar No. 215035
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
michelle_betancourt@fd.org

Attorneys for Mr. Palmer

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW )**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> **RICARDO PALMER**, ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | Case: 08CR1193-DMS **(RBB)** <br><br> Date: TBD <br> Time: TBD <br><br><br> **STATEMENT OF FACTS AND** <br> **MEMORANDUM OF POINTS** <br> **AND AUTHORITIES IN** <br> **SUPPORT OF MOTION** |

**I.**

**STATEMENT OF FACTS**

On April 4, 2008, 2005, Ricardo Palmer was arrested in the Southern District of California and charged with a violation of 8 U.S.C. § 1324, "Bringing in Illegal Aliens without Presentation." His first appearance in federal court was on April 7, 2008. At that time, after hearing from the Government, Federal Defenders and Pre-Trial Services, this Court set bond for Mr. Palmer. The Court ordered that Mr. Palmer execute a personal appearance bond in the amount of $20,000 secured by the signatures of two financially responsible adults. See Exhibit A, Order and Conditions of Release.

On April 9, 2008, Mr. Palmer was arraigned on the indictment. On April 18, 2008, a bond packet was submitted to the United States Attorney office for review of the proposed sureties. See Exhibit B, Bond Packet. The bond packet contained a set of documents that have been sufficient to satisfy signature bond orders in countless cases in this district, namely: appearance bonds signed by Mr. Palmer, as well as Margarita

1  Palmer and Michael P. Palmer, two financially responsible adults, agreeing to be held jointly and severally
2  liable for $20,000 should the bond be violated; the Advice of Penalties and Sanctions form, signed by
3  Mr. Palmer; surety agreements and addenda signed by the Margarita and Michael Palmer, indicating the
4  sureties' employment and salary information; color photocopies of four pieces of Margarita Palmer's
5  identification, specifically, her California Driver's License, Permanent Resident card, Social Security card,
6  and Marriott employment identification; paycheck stubs for Margarita Palmer covering the four-week period
7  from March 7, 2008, to April 4, 2008; color photocopies of two pieces of Michael Palmer's identification,
8  specifically, his California Driver's License and Social Security card; paycheck stubs for Michael Palmer
9  covering the one-month period from March 1, 2008, to March 31, 2008; and a Bail Information Sheet setting
10 forth the contact information of the persons with who Mr. Palmer will live during the pendency of his case,
11 and the contact information of an additional person besides the sureties who would be in contact with
12 Mr. Palmer.  The packet also contained a copy of the Court's order requiring Mr. Palmer to be released under
13 supervision upon execution of a personal appearance bond secured by the co-signatures of two financially
14 responsible adults.  See id.

15       On April 22, 2008, after Federal Defenders' bond desk contacted AUSA Michelle Pettit, counsel
16 learned that the bond packet had been rejected because the proposed sureties had not presented proof of
17 having $20,000 net worth of assets, even though the Court's April 7 bail order nowhere requires proof of net
18 worth.  See Exhibit A (requiring only that the bond be secured by the "co-signatures of two financially
19 responsible adults").  One of the sureties, Michael Palmer, had presented proof of an annual salary in excess
20 of $20,000; the other surety, Margarita Palmer, presented proof of an annual salary over $17,000.  See Exhibit
21 B.

22       On April 24, 2008, Mr. Palmer appeared before this Court to request a modification of the bail
23 conditions to reduce the amount of bond to an amount within Margarita Palmer's annual salary, or, in the
24 alternative, to a higher amount within Michael Palmer's annual salary, but with the number of co-signatures
25 reduced to one.  This Court denied the request without prejudice and gave Mr. Palmer the opportunity to brief
26 the issue.  The Court did not set a future hearing date or briefing schedule; instead, indicated it would issue
27 a minute order.

28       This motion for modification of the bail conditions follows.

## II.

**THE COURT HAS THE DISCRETION TO ACCEPT THE PROPOSED BOND PACKET AS SUBMITTED OR, IN THE ALTERNATIVE, MODIFY THE CONDITIONS OF THE BOND**

The government's objection to the proposed sureties should be rejected because the conditions of release found sufficient by this Court to assure Mr. Palmer's appearance do not contemplate the additional requirement of proof of net worth, as the government contends, under 18 U.S.C. § 3142(c)(2)(B)(xii). This Court ordered a personal appearance bond secured by the signatures of two "financially responsible" adults; it did not order a bond secured by encumbrances against the real and/or personal property owned by those two adults. Thus, while the Court has the authority to impose the subsection (xii) requirement advocated by the government here, it is certainly not required to do so, has not done so yet, and should do so now. See 18 U.S.C. § 3142(c)(2)(B) (setting forth an nonexclusive, nonexhaustive list of additional conditions of release which the Court "may," in its discretion, deem fit to impose subject to the "least restrictive" conditions rule).

The Court's April 7 release order requires Mr. Palmer comply with the standard conditions and two additional conditions: that he "be able to legally remain in the United States during the pendency of the proceedings," and that he "execute a personal appearance bond in the amount of $20,000 P/S secured by: the co-signatures of two financially responsible (related) adults." See Exhibit A. The Court's order was specifically made in accordance with 18 U.S.C. § 3142(c)(2), see Exhibit A, which reads: "The judicial officer **may not** impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2)(emphasis added). The Court's order did not include language that required the sureties to "provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property." See id. Nor did the Court's order indicate that the "surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond." See 18 U.S.C. § 3142(c)(2)(B)(xii). It required, instead, that the sureties be "financially responsible adults," a condition that Mr. Palmer has fulfilled by proof of his sureties' annual salary, gainful employment, and lack of criminal record. See Exhibit B.

//
//
//

A. **<u>The Order Should Not Be Modified to Accommodate the Impermissible Consideration of the Government's "Ability to Collect on Security"</u>**

The government's objection and requirement that the sureties provide proof of $20,000 of unencumbered assets is, in essence, a request that the Court to modify the conditions of release originally set on April 7, 2008. The modification the government seeks—which would effectively convert the signature bond ordered by the Court to a property bond levied against personal property—is neither necessary to reasonably assure Mr. Palmer's appearance, nor appropriate in light of the circumstances. This Court was correct to determine, in issuing its April 7 release order, that bond secured by an encumbrance on property, real or personal, was unnecessary in this case. <u>See</u> Exhibit A (not requiring a property bond). A property bond, as the order was right to recognize, would violate 18 U.S.C. § 3142's strong presumption favoring release "on personal recognizance or upon execution of an unsecured appearance bond," as well as the statute's requirement that only "the least restrictive further condition, or combination of conditions" be imposed that are necessary to "reasonably assure the appearance of the person as required" and the safety of the community. <u>See</u> 18 U.S.C. §§ 3142(a)(1), (b) & (c)(1)(B). By ordering Mr. Palmer released on a signature bond, not a property bond, this Court has already correctly determined that, under § 3142, the "least restrictive" conditions here do not include the requirement that the government be able to immediately "collect on security." <u>See</u> <u>United States v. Frazier</u>, 772 F.2d 1451, 1452-53 (9th Cir. 1985) ("Since the Bail Reform Act of 1984 nowhere authorizes consideration of the government's ability to collect on security, this concern is not a proper basis for imposing a further restrictive condition on Frazier's release.").

The only interest served by the government's proposed modification is an impermissible one: it wants the bail money to be immediately available should bond be violated. <u>See id.</u> By contrast, a signature bond, such as the one ordered by this Court, specifically contemplates further legal action rather than immediate enlargement of the government's coffers. <u>See</u>, e.g., 18 U.S.C. §§ 3146(c) & (d) (providing for an affirmative defense to forfeiture and granting discretion to the district court whether to order forfeiture upon unexcused nonappearance); <u>see also</u> Exhibit B (providing for entry of judgment upon a court's exercise of discretion in favor of ordering forfeiture). The signature bond ordered by this Court effectuates the legitimate purpose of bail: "to provide assurance of [Mr. Palmer's] reappearance after release on bail." <u>United States v. Melville</u>, 309 F. Supp. 824, 826 (S.D.N.Y. 1970). To that end, the signature bond is "a guarantee of the obligation of

1  the defendant to appear." Id. It makes sure that Mr. Palmer will show up to court because it puts on the hook
2  his name and reputation, as well as the name, reputation, and financial circumstances of his mother and
3  brother.  A determination that a signature bond is appropriate, as here, is a determination that the threat of
4  impending legal judgment for $20,000, plus the demonstrated "financial responsib[ility]" of the sureties, and
5  the government's ability to garnish wages, see Exhibit B, is enough "catalyst to aid the appearance of the
6  defendant when wanted." Melville, 309 F. Supp. at 826-27.

7  The government gives no reason to backtrack on that determination now, and there is none.  As the
8  Ninth Circuit recognized in Frazier, this Court *may not* consider the "government's ability to collect" as a
9  factor under the Bail Reform Act; it may only consider what measures are necessary to assure appearance.
10  Frazier, 772 F.2d at 1452-53 (rejecting the government's argument that bond could be conditioned on the
11  absence of encumbrances on property).  In other words, the function of bail "is not for the purpose of
12  providing funds to the government," and bond conditions may not be fashioned to serve this impermissible
13  purpose. See Melville, 309 F. Supp. at 826-27.  The purpose of requiring that Mr. Palmer's sureties prove
14  up "net worth" is, of course, precisely the forbidden purpose of enabling the government to collect on the bond
15  with greater rapidity than if it had to wait for forfeiture payments under an installment plan or garnish wages.

16  **B.  Imposition of the Subsection (c)(1)(B)(xii) Condition Sought By the Government Is Unduly Burdensome and Amounts to De Facto Detention in Violation of 18 U.S.C. § 3142(c)(2).**

18  The Court should reject the government's invitation to reinvent the signature bond as a property bond
19  secured by the personal or real property of the sureties.  The optional condition the government advocates,
20  18 U.S.C. § 3142(c)(1)(B)(xii), which requires a surety to have "a net worth which shall have sufficient
21  unencumbered value to pay the amount of the bail bond," is applicable to bonds secured by property, not
22  bonds secured by the co-signatures of financially responsible adults.  The "net worth" and financial
23  information provision requirements of subsection (xii) contemplate transferring a present property interest
24  to the government—just as a present property interest is transferred to the government in the form of a
25  recorded "trust deed" when a property bond on real property is executed.  A signature bond, not a property
26  bond, is appropriate here.

27  Moreover, imposition of the condition sought by the government would amount to de facto detention
28  in this case as well as countless cases in this district. See 18 U.S.C. § 3142(c)(2).  Meeting a "net worth"

requirement is inordinately difficult, especially given the current state of the economy, and would have a dramatic disparate effect on the many indigent individuals that this office represents. These realities would tread excessively on the right of the accused to be released pending trial, a firmly rooted tenet of our criminal justice system. The Supreme Court has repeatedly affirmed the right of persons charged with crimes to be released with bail. In Stack v. Boyle, 342 U.S. 1 (1951), the Supreme Court strongly stated that:

> federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

Stack, 342 U.S. at 4.

In 1984, Congress passed a Bail Reform Act (which superceded its predecessor, the Bail Reform Act of 1966). Notwithstanding the passage of the Bail Reform Act in 1984, the historical importance of pretrial release to our criminal justice system remains of critical importance:

> it is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance. Executive power to detain an individual is the hallmark of the totalitarian state. Under our Constitution the prohibition against excessive bail, the Due Process Clause of the Fifth Amendment, the presumption of innocence --indeed, the fundamental separation of powers among the Legislative, the Executive and the Judicial Branches of Government -- all militate against this abhorrent practice. Our historical approach eschewing detention prior to trial reflects these concerns . . . .

United States v. Montalvo-Murillo, 495 US 711, 723-24 (1990) (Stevens, J., dissenting). The Bail Reform Act of 1984 has thus far withstood Constitutional challenges only because the Supreme Court found that "Congress carefully prescribed **stringent procedures** to govern this **extraordinary departure** from the guarantee of liberty normally accorded to presumptively innocent individuals." Montalvo-Murillo, 495 U.S. at 724-25 (Stevens, J., dissenting)(emphasis added).

Our Circuit has also strongly affirmed the idea that "federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) (reversing district court's order of detention based on risk of flight of an Iranian citizen, who maintained large foreign bank accounts where the majority of the deposits were made by Iranian Government, who was charged with exporting military items without a license, and who had been warned that his activities were illegal to do so by both U.S. Customs and the FBI). Our Court has firmly stated that "[o]nly

1 in rare circumstances should release be denied." Id. Additionally, any "[d]oubts regarding the propriety of
2 release should be resolved in favor of the defendant." Id. It is within this framework -- with an
3 acknowledgment of the critical role pretrial release plays within our system of criminal justice -- that
4 Mr. Palmer asks this Court to accept the proposed bond packet.

5 **C.    18 U.S.C. 3142(c)(2) and (3) Allows this Court to Modify or Amend the Order of Release**

6 Even if the Court accepts the government's errant contention that the April 7 release order *sub silentio*
7 imported the "net worth" requirement set forth in 18 U.S.C. § 3142(c)(1)(B)(xii), the bond conditions should
8 be modified to permit Mr. Palmer's release upon submission of the proposed bond packet attached hereto as
9 Exhibit B. 18 U.S.C. § 3142(c)(1) states that the "judicial officer **shall** order pretrial release of the person"
10 subject to two mandatory conditions as outlined in 18 U.S.C. § 3142(c)(1)(A) and the least restrictive further
11 condition, or combination of conditions as specified in 18 U.S.C. § 3142(c)(1)(B). 18 U.S.C. § 3142(c)(1)(B)
12 further states that the judicial officer **may** include any of the listed conditions or any other "condition that is
13 reasonably necessary to assure the appearance or the person as required and to assure the safety of any other
14 person and the community." See 18 U.S.C. § 3142(c)(1)(B)(i)-(xiv). Nowhere does the statute mandate that
15 any of the fourteen listed conditions be imposed; thus, giving the judicial officer every bit of discretion to set
16 the bond conditions as necessary to reasonably assure the appearance of the person as required. Moreover,
17 18 U.S.C. § 3142(c)(3) gives the judicial officer the further discretion to "amend the order to impose
18 additional or different conditions of release."

19 It is clear from a close reading of the statute that 18 U.S.C. § 3142(c)(1)(B)(xii), that this condition
20 is not a mandatory condition as the statute states that the Court "may include the [listed] condition," see 18
21 U.S.C. § 3142(c)(1)(B), if it so determines such condition necessary to "reasonably assure the appearance of
22 the person as required and the safety of any other person and the community." Id. Moreover, United States
23 v. Frazier, 772 F.2d 1451 (9th Cir. 1985), instructs the Court that a financial condition cannot be imposed
24 merely out of concern for the government's claimed inability to protect its interest in the event of a need to
25 forfeit because the "Bail Reform Act of 1984 nowhere authorizes consideration of the government's ability
26 to collect on security." 772 F.2d at 1453; see also United States v. Orta, 760 F.2d 887, 890 (8th Cir. 1985)
27 (*en banc*)(Act prohibits using high financial conditions to detain defendants); United States v. Badalamenti,
28 810 F.2d 17 (2d Cir. 1987); United States v. Holloway, 781 F.2d 124 (8th Cir. 1986).

1	Additionally, 18 U.S.C. § 3142(c)(1)(B)(xii) is inapplicable to bonds secured by the signatures of
2	financially responsible adults as ordered in this case. Removal of any "net worth" condition is therefore
3	necessary to resolve the conflict, by application of the rule of lenity, in Mr. Palmer's favor. Subsection (xii)
4	does not discuss "financially responsible adults" but rather deals with bonds secured by real property, personal
5	property or bail bond companies. This is supported by the requirement within the section that "information
6	regarding the value of assets and liabilities" and the "extent of encumbrances against the surety's property"
7	be provided to the court. 18 U.S.C. § 3142(c)(1)(B)(xii). If read otherwise, as the Government is asking the
8	Court to do, individual would never be allowed to post bond unless proposed sureties had property to put
9	forth. Such a reading of the statute would preclude most of the indigent clients before the Court to be placed
10	in de facto detention. See 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition
11	that results in the pretrial detention of the person.").

12	Here, the proposed sureties are two financially responsible adults as requested by the Court. Both
13	individuals are gainfully employed, have a stable place of residence, have been members of the community
14	for some time, do not have outstanding fines or warrants, and have executed an agreement that outlines their
15	responsibilities as sureties in the event the bond must be forfeited. The government has made no showing that
16	any additional burden is required to reasonably assure Mr. Palmer's appearance. Moreover, as the Court is
17	well aware, proposed sureties have routinely been accepted in the Southern District since at least 1995. To
18	change the requirements merely to succumb to the government's desire to collect on a bond that theoretically
19	may be forfeited is unduly restrictive and would be de facto detention of an individual who is neither a flight
20	risk nor a danger to the community.

21	Therefore, the Court may, and should, accept the bond packet as proposed by Mr. Palmer or modify
22	the conditions as it sees fit.

### III.

### CONCLUSION

25	A review of Section 3142(c) reveals that the government is incorrect in rejecting the proposed sureties
26	as this Court did not impose the additional requirements outlined in subsection xii. Accordingly, this Court
27	should find that the proposed bond packet is sufficient to reasonably assure Mr. Palmer's appearance and to
28	serve as an incentive to comply with all the conditions set by the Court. For the foregoing reasons,

1 | Mr. Palmer respectfully requests that this Court order his release forthwith.

2 |                                        Respectfully Submitted,

3 |                                        /s/ *Michelle Betancourt*

4 | Dated:  April 28, 2008                 **MICHELLE BETANCOURT**
                                           Federal Defenders of San Diego, Inc.
5 |                                        Attorneys for Mr. Palmer